UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNIFER WARBURTON,

                        Plaintiff,

v.                                                                    1:17-CV-1219
                                                                     (GTS/CFH)
COUNTY OF ULSTER; JOHN DOES I-V;
ABRAM MARKIEWITZ; OSCAR LOPEZ;
ROBERT SHAMRO; ROBERT LEONARDO;
DENNIS DOYLE; ANDRES ARESTIN; RICHARD
JACOBS; and PHILLIP MATTRACION,[1]

                        Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

SUSSMAN & ASSOCIATES                         MICHAEL H. SUSSMAN, ESQ.
   Counsel for Plaintiff
1 Railroad Avenue
Goshen, NY 10924

MCCABE & MACK LLP                                DAVID L. POSNER, ESQ.
   Counsel for Defendants County of Ulster
63 Washington Street
Poughkeepsie, NY 12602

DRAKE LOEB PLLC                                    ADAM RODD, ESQ.
   Counsel for Defendants Jacobs and
   Phillip Mattracion
555 Hudson Valley Avenue, Suite 100
New Windsor, NY 12553

GLENN T. SUDDABY, Chief United States District Judge

---

[1]       The Clerk of the Court is directed to correct the spelling of the name of Defendant
Mattracion in the caption of the docket sheet in this case, given that the name is spelled without a
"t" in Plaintiff's Amended Complaint and the parties' memoranda of law.  (*See generally* Dkt.
No. 12, at 1; Dkt. No. 71, Attach. 26; Dkt. No. 74; Dkt. No. 79.)

<u>**DECISION and ORDER**</u>

Currently before the Court, in this civil rights action filed by Jennifer Warburton ("Plaintiff") against the County of Ulster, John Does I-V, Abram Markiewitz, Oscar Lopez, Robert Shamro, Robert Leonardo, Dennis Doyle, Andres Arestin, Richard Jacobs, and Phillip Mattracion ("Defendants"), are the following two motions: (1) the motion of Defendants County of Ulster, Markiewicz, Lopez, Shamro, Leonardo, Doyle, and Arestin ("County Defendants" or "Urgent Defendants") for a judgment on the pleadings, or in the alternative for partial summary judgment, with respect to some of Plaintiff's claims against them (i.e., her Fourteenth Amendment due process claim, Fourth Amendment unreasonable-search-and-seizure claim, and state law property-damage claim); and (2) the motion of Defendants Jacobs and Mattracion ("Ellenville Defendants") for a judgment on the pleadings, or in the alternative for summary judgment, with respect to the claims against them.  (Dkt. No. 71, Attach. 26; Dkt. No. 72, Attach. 6.)  For the reasons set forth below, both the Urgent Defendants' motion and the Ellenville Defendants' motion are granted.

I.    **RELEVANT BACKGROUND**

      A.    **Relevant Procedural History**

      On April 13, 2018, pursuant to a stipulation between Plaintiff and the County Defendants, Plaintiff filed an Amended Complaint against Defendants.  (Dkt. No. 12.)  Although the County Defendants submitted a motion to dismiss prior to Plaintiff amending her Complaint, they filed a letter-brief on April 25, 2018, indicating that their motion was not impacted by Plaintiff's Amended Complaint and there is no change to the County Defendants' arguments.  (Dkt. No. 15.)

On September 24, 2018, the Court entered a Decision and Order granting the County Defendants' motion to dismiss certain of Plaintiff's claims against them for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 18.)  Specifically, the Court dismissed the following: (1) Plaintiff's Takings Clause claim against the County Defendants pursuant to the Fifth Amendment ("Claim Three"); (2) Plaintiff's *Monell* claims against the County Defendants ("Claim Four"); and (3) Plaintiff's failure-to-train-and-supervise claim against Defendant Van Blarcum ("Claim Six").  (*Id.*)

On October 30, 2018, Plaintiff entered a stipulation of partial discontinuance with Defendants County of Ulster and Van Blarcum.  (Dkt. No. 30.)  That same day, the Court entered an order approving the stipulation of partial discontinuance with respect to Plaintiff's first, second, and fifth causes of action as they related to Defendants County of Ulster and Van Blarcum only.  (Dkt. No. 31.)

The Amended Complaint asserts a claim against Brian Schug.  (Dkt. No. 12, at ¶¶ 44-57.) However, neither the caption of the Amended Complaint nor the caption of the Court's docket sheet listed Mr. Schug as a Defendant.  As a result, the Court directed the Clerk of the Court to add Brian Schug as a Defendant in its previous Decision and Order.  (Dkt. No. 18.)  On July 1, 2019, the Court granted Defendant Shug's motion to dismiss the claims against him and terminate him as a Defendant in this action.  (Dkt. No. 60.)  As a result, he is no longer a Defendant in this action.

On May 7, 2020, the Urgent Defendants filed their motion for judgment on the pleadings, or in the alternative, for summary judgment.  (*See generally* Dkt. No. 71.)  On May 8, 2020, the Ellenville Defendants filed their motion for judgment on the pleadings, or in the alternative, for summary judgment.  (*See generally* Dkt. No. 72.)  Plaintiff filed a combined response in

3

opposition to Defendants' motions on June 1, 2020.  (Dkt. No. 74.)  The Urgent Defendants and

Defendant Mattracion each filed a reply memorandum of law in further support of their

individual motions on June 8, 2020.  (Dkt. No. 79; Dkt. No. 81.)

      **B.**       **Plaintiff's Amended Complaint**

      Generally, liberally construed, Plaintiff's Amended Complaint alleges as follows.  (*See*

*generally* Dkt. No. 12 [Plf.'s Am. Compl.].)  She is the owner of 8 Warren Street, Ellenville,

New York (the "Property").  (*Id.*)  The Property contains an apartment building with four

apartments and some shared common areas maintained by Plaintiff.  (*Id.*)  As of January 11,

2017, Plaintiff and her husband maintained for their own use and occupancy an apartment on the

Property (designated as Apartment 2), and leased on a yearly basis the other three apartments on

the Property (designated as Apartments 1, 3, and 4).  (*Id.*)  On or about January 11, 2017, at 5:30

A.M., Defendants Markiewitz, Lopez, Shamro, Leonardo, Doyle, and Arestin of the Ulster

County Sheriff's Department, conducted a "raid" at the Property.  (*Id.*)  The Ellenville

Defendants (a police officer and chief, respectively, with the Village of Ellenville Police

Department) also participated in the raid at the Property.  (*Id.*)  During the raid, Defendants

entered Apartment 2 and caused extensive and unnecessary physical damage, leading to the

condemnation and boarding up of the Property by the building inspector for the Village of

Ellenville.  (*Id.*)

      Based upon these  allegations, the Amended Complaint asserted seven claims, the

following of which survived the Stipulation of the parties and the Court's Decision and Orders:

(1) a claim that all Defendants except Brian Schug violated Plaintiff's due process rights

pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983 ("First Claim"); (2) a claim that all

Defendants except Brian Schug violated Plaintiff's right to be free from unreasonable searches

and seizures pursuant to the Fourth Amendment and 42 U.S.C. § 1983 ("Second Claim"); (3) a claim that the Ellenville Defendants intentionally engaged in an unauthorized taking prohibited by the Fifth Amendment and 42 U.S.C. § 1983 ("Third Claim"); and (4) a claim that all Defendants except Richard Jacobs, Phillip Mattracion, and Brian Schug negligently or recklessly caused undue and unnecessary damage to Plaintiff's Property pursuant to New York common law ("Fifth Claim").  (*See generally* Dkt. No. 12 [Pl.'s Am. Compl.].)

      **C.**    **Undisputed Material Facts**

      Unless otherwise noted, the following facts were asserted and supported with accurate citations by Defendants' in their Statement of Material Facts and expressly admitted or denied without appropriate record citations by Plaintiff, in her responses thereto. (*Compare* Dkt. No. 71, Attach. 1 [Urgent Defs.' Rule 7.1 Statement] and Dkt No. 72, Attach. 5 [Ellenville Defs.' Rule 7.1 Statement] *with* Dkt. No. 73 [Plf.'s Response to Urgent Defs.' Rule 7.1 Statement] *and* Dkt No. 75 [Plf.'s Response to Ellenville Defs.' Rule 7.1 Statement].)

      1.    Plaintiff co-owns income property located on the corner of Park Street and Warren Street in the Village of Ellenville and its address is known as either 10 Park Street or 8 Warren Street (the "Property"). The building consists of four rental apartments, identified as Apartments 1, 2, 3, and 4.

      2.    Plaintiff and her husband's primary residence is in Newburgh, New York.

      3.    On January 11, 2017, Apartment 1 on the first floor was leased to Jenifer Eadly, who had been Plaintiff's tenant since 2008, Apartment 3 on the second floor was leased to Family of Woodstock, a not-for-profit agency assisting people with housing, which in turn rented Apartment 3 to Katherine Jennings, and Apartment 4 on the second floor was rented to Carlos Antonio-Lopez, who lived with Ina

Jennings, Katherine Jennings' sister. On January 11, 2017, Apartment 2 on the first floor was being renovated and was without furniture.

4.     During January 2017, Plaintiff and her husband were living at their residence in Newburgh, New York.

5.     As of January 11, 2017, Antonio-Lopez had spent approximately six months renovating Apartment 2 for Plaintiff, who was reserving it for herself.  During this time, Antonio-Lopez was not paying rent in return for his work in Apartment 2 and other work at the premises.

6.     Plaintiff was aware that Katherine Jennings would lock herself out of Apartment 3 and would then kick open the door to get in.  Prior to January 11, 2017, Plaintiff wanted Katherine Jennings out of Apartment 3 because she was dealing drugs, getting arrested, and damaging the apartment.

7.     Prior to January 11, 2017, Katherine Jennings would kick in the exterior door on the Park Street side of the Property.[2]  Katherine Jennings "was a rough tenant on that apartment," kicked in the interior entrance door to Apartment 3, and had cats within Apartment 3, which destroyed the carpets.  Plaintiff was also "quite certain" that Katherine Jennings damaged the walls to Apartment 3.

8.     Since August of 2016, Plaintiff had been attempting to remove Katherine Jennings from the Property and advised Family of Woodstock she was not going to renew Katherine Jennings' tenancy due to various damage she inflicted on the

---

[2]     The Court notes that Plaintiff denies the fact as stated; however, Plaintiff does not dispute that Katherine Jennings kicked in the exterior door.  (Dkt. No. 73, at 4.)  Plaintiff merely clarifies that, after Katherine Jennings had kicked in the exterior door, Plaintiff repaired the door on that one occasion.  (*Id.*)

Property.  Family of Woodstock then sent Katherine Jennings a "10 Day Notice to Quit" Apartment 3 of the Property based on her destructive conduct at the Property.

9.    A Warrant of Eviction was issued by the Village of Ellenville Justice Court on December 6, 2016.  The execution of this Warrant of Eviction was stayed until January 13, 2017.

10.    When Plaintiff was last at the Property (one week prior to January 11, 2017) Plaintiff had no specific recollection of entering apartments 1, 3, or 4.

11.    Since June 2016, Defendant Shamro and the URGENT Team ("Ulster Regional Gang Enforcement Narcotics Team") conducted an undercover operation in the Village of Ellenville targeting Antonio-Lopez.

12.    Defendant Shamro, a Deputy Sheriff employed by the Ulster County Sheriff's Office, submitted an affidavit for a search warrant on January 10, 2017, with respect to the premises occupied by Antonio-Lopez and Ina Jennings at the Property.  The search warrant was signed on January 10, 2017.

13.    On January 11, 2017, Defendant Markiewicz was assigned to supervise the execution of the search warrant at the subject premises and was in charge of the operation.  No member of the Ellenville police department, including Defendants Mattracion and Jacobs, played any role in applying for and obtaining the January 10, 2017, search warrant.

14.    The search warrant was sealed, and it was a "No Knock" warrant authorizing its execution "without giving prior notice."  The warrant authorized, *inter alia*, a

search for "any controlled substance," "marijuana," "currency," "weapons," drug

paraphernalia," "phones" and "financial records."

15.    The warrant was executed in the early morning hours of January 11, 2017.

Defendant Markiewicz supervised the execution of the search warrant.

16.    Entry was made through the exterior door (on Park Street) that immediately

accessed a staircase which led directly upstairs to the second-floor apartments

labeled Apartments 3 and 4.  Apartments 1 and 2 on the first floor are accessible

through two separate entrances on Warren Street.  There is no interior access

between any of the apartments.

17.    Defendants Markiewicz, Lopez, Shamro, Leonardo, Doyle, and Arestin were

members of the URGENT Task Force present for the search warrant execution.

Defendants Mattracion and Jacobs were members of the Ellenville Police

Department who partnered with the URGENT Team on the operation.

18.    Brian Schug, a Code Enforcement Officer/Building Inspector II for the Village of

Ellenville arrived at the Property on January 11, 2017.  Mr. Schug is certified by

the New York State Department of State as a Code Enforcement Officer and is

licensed by the National Association of Certified Housing Inspectors and is fully

familiar with State and Village Codes regulating building structures and fire

safety.

19.    After entering the Property, Mr. Schug issued four tickets to Plaintiff for housing

code violations.  Mr. Schug also issued and posted notices indicating that the

subject structure is unsafe; that its occupancy had been prohibited; and issued an

order to remedy.

20.   Plaintiff was not present at the property when the execution of the search warrant took place.  Plaintiff had no recollection on being inside any of the rental units during her last visit prior to January 11, 2017.

21.   Plaintiff has not spoken to any of her tenants about what occurred on the morning of January 11, 2017.  Plaintiff's first visited the property on January 14, 2017, approximately three days after the execution of the search warrant.

22.   Upon arrival, Plaintiff claims she found damage to the molding to the interior door of Apartment 2, but no evidence of any damage inside that apartment.  In apartment 3, Plaintiff found "tenant's furniture and stuff everywhere," in addition to damage to the door.

23.   Plaintiff pled guilty to three of the four tickets, and the fourth ticket was either withdrawn or dismissed.[3]  Plaintiff was fined $100 for each guilty plea.

24.   Neither Defendant Jacobs nor Markiewicz has been served with the summons and complaint filed in this action.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.  (*Id*.)

### D.   Parties' Briefing on the Defendants' Motions for Summary Judgment

#### 1.   The Urgent Defendants' Memorandum of Law-in-Chief

Generally, in support of their motion, the Urgent Defendants assert the following eight arguments: (1) the Urgent Defendants are entitled to judgment on the pleadings with respect to

---

[3]      Plaintiff admits to pleading guilty to three of the four tickets because she was advised that pleading guilty was the most expeditious manner to regain access to her building and renovate it as required to resume renting to tenants.  (Dkt. No. 73, at ¶ 71.)

Plaintiff's Fourteenth Amendment due process claim because (a) Plaintiff's Amended Complaint merely alleges that the Urgent Defendants' property damage was the result of random, unauthorized conduct by those executing the search warrant, (b) Plaintiff has an adequate state remedy for the alleged property loss through the commencement of this action, and (c) Plaintiff's state tort claim in this action negates her Fourteenth Amendment due process claim in that the state tort claim is an adequate post-deprivation remedy; (2) in the alternative, summary judgment is appropriate with respect to Plaintiff's Fourteenth Amendment due process claim because the record contains no evidence that the Urgent Defendants' alleged misconduct was authorized in advance by a high-placed Ulster County official; (3) Plaintiff lacks standing to raise a Fourth Amendment claim with respect to the search because Plaintiff (a) has no protected Fourth Amendment rights in the apartments she leased to other individuals, (b) has no expectation of privacy in the vacant apartment in that standing is measured at the time of the search, and at the time of the execution of the search warrant, Plaintiff's apartment was vacant and other individuals had access to it, and (c) has no admissible evidence to support her claim that the Urgent Defendants damaged her property, and thus summary judgment is proper; (4) the Urgent Defendants are entitled summary judgment on Plaintiff's fifth claim (i.e., her state-law claim of property damage) because Plaintiff has adduced no admissible evidence to support her claim that the Urgent Defendants damaged her property; (5) in the event the Court determines that either of Plaintiff's federal claims survive, the Urgent Defendants are nevertheless entitled to qualified immunity on the ground that the Urgent Defendants did not violate clearly established statutory or constitutional rights; (6) Defendants Arestin, Lopez, and Leonardo had no personal involvement in the challenged search, and thus Plaintiff cannot hold them liable under 42 U.S.C. § 1983; (7) the Amended Complaint should be dismissed against Defendant Markiewicz for a

failure of process in violation of the Court's Order and Plaintiff's failure to advance a bona fide excuse for failing to serve Defendant Markiewicz; and (8) in the event the Court dismisses Plaintiff's federal claims but does not award summary judgment with regard to state law claim for property damage, the Court should decline to exercise supplemental jurisdiction over the state law claim for lack of subject-matter jurisdiction.  (*See generally* Dkt. No. 71, Attach. 26 [Urgent Defs.' Memo. of Law].)

### 2.	The Ellenville Defendants' Memorandum of Law-in-Chief

Generally, in support of their motion for judgment on the pleadings, or in the alternative for summary judgment, the Ellenville Defendants assert the following five arguments: (1) Plaintiff's first claim (under the Fourteenth Amendment's Due Process Clause) should be dismissed as against the Ellenville Defendants because (a) Plaintiff expressly asserted and preserved her post-deprivation remedies for the property damages she allegedly sustained, thereby rendering Plaintiff's due process claim non-viable as a matter of law, and (b) the Amended Complaint fails to establish that the Ellenville Defendants took any part in the alleged property damage; (2) Plaintiff's second claim (under the Fourth Amendment) should be dismissed as against the Ellenville Defendants because Plaintiff lacks standing to assert a Fourth Amendment claim, and, Plaintiff fails to allege the Ellenville Defendants' personal involvement in the alleged Fourth Amendment violation; (3) Plaintiff's third claim (under the Fifth Amendment's Takings Clause) should be dismissed as against the Ellenville Defendants on the ground that the legal theory and factual claims underlying this claim as applied to the Ellenville Defendants are identical to claims applied to Defendants in the Court's Decision and Order of September 24, 2018, and the Court already determined in its Decision and Order of September 24, 2018, that the Defendants' alleged actions were not a violation of the Takings Clause of the

Fifth Amendment; (4) in the event the Court denies the Ellenville Defendants motions, they are nevertheless entitled to qualified immunity because there is no clear precedent that damaging the exterior door frame to a vacant apartment, without entry or intrusion of the apartment itself, represented an unlawful "crossing of the threshold" in violation of Plaintiff's Fourth Amendment rights, and there is no authority that establishes that Plaintiff had a constitutional right to a post-deprivation hearing for alleged property damages independent of her state law claim for property damage; and (5) all of Plaintiff's claims asserted against Defendant Jacobs should be dismissed because he was never properly served with process in this lawsuit, and (despite a Court order directing Plaintiff to show cause as to why the Court should not dismiss Plaintiff's action against Defendant Jacobs) Plaintiff has not attempted to show cause as to why her action against Defendant Jacobs should not be dismissed because of the lack of service.  (*See generally* Dkt. No. 72, Attach. 6 [Ellenville Defs.' Memo. of Law]).

### 3.      Plaintiff's Combined Opposition Memorandum of Law

Generally, in her opposition to Defendants' motions,[4] Plaintiff asserts the following two arguments: (1) the Urgent Defendants' motion for judgment on the pleadings, or in the alternative for summary judgment, should be denied because (a) the Urgent Defendants rely on disputed material facts (including contradicted evidence and misconstructions of Plaintiff's testimony) in support of their motion, (b) Plaintiff has standing to assert her Fourth Amendment claim on the grounds that the Urgent Defendants cite inapposite authority and Plaintiff's privacy interest in Apartment 2 is not defeated by another individual's ability to access the unit for

---

[4]      In her opposition to Defendants' motions, Plaintiff agreed to voluntarily discontinue (1) her First Claim (under the Fourteenth Amendment's Due Process Clause) against all Defendants, (2) all claims against Defendants Jacobs and Markiewicz, who were not properly served, and (3) her Third Claim (under the Fifth Amendment's Takings Clause) against the Ellenville Defendants.  (Dkt. No. 74, at 7.)

renovation purposes, (c) the Fourth Amendment was triggered by the Urgent Defendants'
damage to the door and door frame of Apartment 2 because the Urgent Defendants rely on
speculation that other individuals could have damaged Plaintiff's property, (d) the Court should
deny the Urgent Defendants' claim of qualified immunity on the grounds that Courts have
recognized a clearly established rights that any physical invasion of the structure of a home, even
by a fraction of an inch, is not tolerated, and as the owner of the property, Plaintiff had a
reasonable expectation of privacy in the building itself, (e) Defendants Arestin, Lopez, and
Leonardo are proper Defendants in this action because these individuals were in the building and
granting summary judgment would be tantamount to the Court making an impermissible
credibility determination, and (f) should the Court dismiss Plaintiff's federal claims, the Court
should nevertheless retain the state law claim because dismissal of a federal claim at this stage in
the action is not fair under Second Circuit precedent; and (2) the Ellenville Defendants' motions
should be denied because (a) they rely on disputed material facts (whether the search warrant
authorized the search and entry of only one unit [Apartment 4]), (b) the Ellenville Defendants
violated the Fourth Amendment by kicking in the doors of her building, including the door of
Apartment 2, and (c) Defendant Mattracion is not entitled to qualified immunity for the same
reasons the Urgent Defendants are not entitled to qualified immunity.  (*See generally* Dkt. No. 74
[Plf.'s Opp'n Memo. of Law].)

### 4.     The Urgent Defendants' Reply Memorandum of Law

Generally in their reply, the Urgent Defendants assert the following three arguments: (1)
summary judgment dismissing Plaintiff's Amended Complaint is proper because Plaintiff has
failed to produce evidence and cannot identify the individual(s) who caused the damage to her
property; (2) Plaintiff lacks standing to assert a Fourth Amendment claim on the ground that

Plaintiff, as the owner of the Property, has an interest in the doors leading to the apartments in the property itself; and (3) the Urgent Defendants are entitled to qualified immunity because it is not clearly established that damaging a door and its frame, without entry inside, is a Fourth Amendment violation.  (*See generally* Dkt. No. 79 [Urgent. Defs.' Reply Memo. of Law].)

### 5.      The Defendant Mattracion's Reply Memorandum of Law

Generally, in his reply to Plaintiff's opposition, Defendant Mattracion asserts the following three arguments: (1) Plaintiff's position fails to raise any genuine issues of material fact as to his involvement with Plaintiff's Fourth Amendment claim and because Defendant Mattracion established a *prima facie* case demonstrating his lack of involvement in the alleged violation, he is entitled to summary judgement; (2) even if the Court accepted the facts underlying Plaintiff's Fourth Amendment claim as true, Plaintiff cannot assert a valid Fourth Amendment claim because the law is settled that a property owner has no protected Fourth Amendment privacy interest in the units rented to and occupied by others; and (3) even if the Court finds that the damage to Plaintiff's property was a violation of her constitutional rights, Defendant Mattracion is nevertheless entitled to qualified immunity on the ground that Plaintiff has failed to show Defendant Mattracion violated a clearly established constitutional right by physically damaging a door frame and door to an unoccupied apartment, without entry into the apartment itself.  (*See generally* Dkt. No. 81.)

## II.    RELEVANT LEGAL STANDARDS

### A.      Legal Standards Governing Motions for Judgment on Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim*." Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).  It has long been understood

that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[5]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

---

[5]       *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases);
*Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing
Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal"
notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d
ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding
that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.
2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556
U.S. 662, 677-82 (2009).

     Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an
appellate decision holding that a complaint had stated an actionable antitrust claim under 15
U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court
"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),
that "a complaint should not be dismissed for failure to state a claim unless it appears beyond
doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him
to relief."  *Twombly*, 550 U.S. at 561-62.  Rather than turn on the *conceivability* of an actionable
claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable
claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need
"set out in detail the facts upon which [the claim is based]," it does mean that the pleading must
contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the "[f]actual
allegations must be enough to raise a right to relief above the speculative level [to a plausible
level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

     As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has
facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 [internal quotation marks and citations omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*. at 678, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id*.  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[6]

### B.   Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty*

---

[6]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419,
422 (2d. Cir. 2011) (explaining that conversion from a motion to dismiss for failure to state a
claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the
"matters outside the pleadings" in consist of [1] documents attached to the complaint or answer,
[2] documents incorporated by reference in the complaint (and provided by the parties), [3]
documents that, although not incorporated by reference, are "integral" to the complaint, or [4]
any matter of which the court can take judicial notice for the factual background of the case);
*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir 2010) (explaining that a district
court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in
the complaint, documents attached to the complaint as exhibits, and documents incorporated by
reference in the complaint. . . .  Where a document is not incorporated by reference, the court
may neverless consider it where the complaint relies heavily upon its terms and effect, thereby
rendering the document 'integral' to the complaint. . . .  However, even if a document is
'integral' to the complaint, it must be clear on the record that no dispute exists regarding the
authenticity or accuracy of the document.  It must also be clear that there exist no material
disputed issues of fact regarding the relevance of the document.") [internal quotation marks and
citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The
complaint is deemed to include any written instrument attached to it as an exhibit or any
statements or documents incorporated in it by reference.") (internal quotation marks and citations
omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per
curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a
[document] upon which it solely relies and which is integral to the complaint," the court may
nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss,
without converting the proceeding to one for summary judgment.") (internal quotation marks and
citation omitted).

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[7]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[8]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[9]

---

[7]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[8]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[9]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[10]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[11] Stated another way, when a non-movant fails to oppose a legal argument

---

[10]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[11]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### C.    Legal Standard Governing Exercise of Supplemental Jurisdiction

Because supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right," *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), a "district court 'cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.'" *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1182 [2d Cir. 1996]).  "The state and federal claims must derive from a common nucleus of operative fact."  *Gibbs*, 383 U.S. at 726.  Federal district courts may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 422, 446-47 [2d Cir. 1998] ("the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367[c].").

A district court may decline to exercise supplemental jurisdiction in four circumstances: "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3)

the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  "Once a district court's discretion is triggered under [28 U.S.C.] § 1367(c), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' [*Carnegie-Mellon Univ., v. Cohill*, 484 U.S. 343, 350 (1988)] in deciding whether to exercise jurisdiction."  *Kolari*, 455 F.3d at 122 (citing *Itar-Tass*, 140 F.3d at 446-47).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Cohill*, 484 U.S. at 350 n.7.  However, "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote . . . [judicial] economy, convenience, fairness, and comity."  *Jones v. Ford Motor Credit. Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citing *Gibbs*, 383 U.S. at 726).  "The principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of factors always points that way."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018).

When analyzing judicial economy, district courts consider several issues, including: "their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation[.]"  *Chenesky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (citing *Allard v. Arthur Anderson & Co.*, 957 F. Supp. 409, 425 [S.D.N.Y. 1997]).  "In weighing convenience, courts ask whether the case is easily resolvable, and, if it is, whether it is more appropriate to resolve the case than decline to exercise jurisdiction."  *Chenesky*, 942 F. Supp. 2d at 392 (citing *Cement & concrete*

22

*Workers Dist. Council Welfare Fund v. Anthony Frascone*, 68 F. Supp. 2d 166, 174 [E.D.N.Y. 1999]). When evaluating fairness, district courts balance "questions of equity; Will declining jurisdiction prejudice the parties, and are the parties responsible for any such prejudice?" *Id.* (citing *Pitchell v. Callan*, 13 F.3d 545, 549 [2d Cir. 1994]).

## III.   ANALYSIS

Plaintiff has agreed to voluntarily discontinue her First Claim (under the Fourteenth Amendment's Due Process Clause) against all Defendants, all claims against Defendants Jacobs and Markiewicz, and her Third Claim (under the Fifth Amendment's Takings Clause) against the Ellenville Defendants (*see, supra,* note 4 of this Decision and Order), and the Court has decided to accepted that request under Fed. R. Civ. P. 41(a)(2).  All that remains for the Court's consideration, therefore, are Plaintiff's Second Claim (under the Fourth Amendment's prohibition against unreasonable searches and seizures) and Fifth Claim (under state law for property damage).

### A.   Whether Plaintiff's Second Claim (Under the Fourth Amendment) Must Be Dismissed Against the Urgent Defendants and Defendant Mattracion

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in the Urgent Defendants' and Ellenville Defendants' memoranda of law. (Dkt. No. 71, Attach. 26; Dkt. No. 72, Attach. 6; Dkt. No. 79.)  To those reasons, the Court would add the following analysis.

#### 1.   Apartments 1, 3, and 4

When analyzing whether the challenged search violated an individual's Fourth Amendment rights, courts must first determine whether the search infringed on an interest of the individual that the Fourth Amendment was designed to protect.  *Rakas v. Illinois*, 439 U.S. 128, 140 (1978).  In other words, a party challenging a search must show a "legally cognizable

privacy interest in the searched premises at the time of the search." *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993) (citing *Rawlings v. Kentucky*, 448 U.S. 98 [1980]; *United States v. Salvucci*, 448 U.S. 83 [1980]).  "[P]roperty rights are not the singular measure of Fourth Amendment violations;" *Soldal v. Cook Cty.*, 506 U.S. 56, 64 (1992), "'the Fourth Amendment protects people, not places.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting *Katz v. United States*, 389 U.S. 347, 351 [1967]).  "To succeed on a Fourth Amendment claim alleging an unlawful search, a plaintiff must demonstrate standing, which requires a showing that he had a reasonable expectation of privacy in the place that was searched." *Tarantino v. City of Ornell*, 615 F. Supp. 2d 102, 109 (W.D.N.Y. 2009), abrogated on other grounds, *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F. 3d 135 (2d Cir. 2010).

In this case, although Plaintiff argues that her status as the building's owner is different from individuals who raise Fourth Amendment challenges in criminal cases, she fails to differentiate her position beyond the fact that Plaintiff is not the subject of a criminal case.  (Dkt. No. 74, at 15.)  Plaintiff also seemingly ignores the expectation-of-privacy component of a Fourth Amendment claim.  Specifically, Plaintiff attempts to conflate her Fourth Amendment claim with her destruction-of-property claim.  Plaintiff fails to cite, nor has the Court found, any Second Circuit authority for the point of law that a building owner has a reasonable expectation of privacy in the publicly accessible doors and door frames of the building's individual apartments.  Moreover, despite Plaintiff's assertion that no tenant consented to the destruction of property, she fails to account for any non-inculpatory reason that the property could have been destroyed.

Although the Court is "required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and

to eschew credibility assessments," *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004), Plaintiff nevertheless fails to produce evidence that Defendants, and not some other individual, caused her property to be damaged.  Because it is the movant's initial burden to demonstrate an absence of material facts, and the Urgent Defendants (in addition to Defendant Mattracion) have met their burden by producing evidence that individual Defendants only entered into Apartment 4 (the subject of the search warrant),[12] Plaintiff must present specific facts to demonstrate there is a genuine issue that should be left for the fact finder to decide. *Carroll v. Krumpter*, 397 F. Supp. 3d 234, 243 (E.D.N.Y. 2019).  However, Plaintiff relies on mere speculation, or a lack of explanation, in support of her argument that Defendants were the individuals who damaged her property.  (Dkt. No. 74, at 15-16.)  It is well established that "[c]onjecture, speculation, or conclusory statements are not enough to defeat summary judgment." *Carroll*, 397 F. Supp. 3d at 243 (citing *Kulak v. City of New York*, 88 F.3d 63, 71 [2d Cir 1996]).

The Court also rejects Plaintiff's Fourth Amendment claim involving the doors and door frames of each Apartment, among other common spaces of Plaintiff's building.  (Dkt. No. 12, at ⁋ 31.)  Second Circuit precedent is clear: "a person does not have a reasonable expectation of privacy in the common areas of multi-unit buildings." *United States v. Simmonds*, 641 F. App'x, 99, 104 (2d Cir. 2016); *United States v. Gray*, 283 F. App'x 871, 873 (2d Cir. 2008); *Wilson v. Sessoms-Newton*, 14-CV-0106, 2017 WL 3575240, at *7 (E.D.N.Y. Aug. 17, 2017).  "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Katz, v. United States*, 389, U.S. 347, 351 (1967).  In this case,

---

[12]      (Dkt. No. 71, Attach. 15, at ⁋ 6 [Markiewicz Aff.]; Dkt. No. 71, Attach. 16, at ⁋ 5 [Lopez Aff.]; Dkt. 71, Attach. 17, at ⁋ 7 [Shamro Aff.]; Dkt. No. 71, Attach. 18, at ⁋ 3 [Leonardo Aff.]; Dkt. No. 71, Attach. 20, at ⁋ 4 [Doyle Aff.]; Dkt. No. 71, Attach. 21, at ⁋ 2 [Arestin Aff.].)

it is clear that Plaintiff does not have any expectation of privacy in the door or door frame of her apartment.  *See United States v. Santana*, 427 U.S. 38, 42 (1976) ("While it may be true that under the common law of property the threshold of one's dwelling is 'private,' as is the yard surrounding the house, it is nonetheless clear that under the cases interpreting the Fourth Amendment [the Defendant] was in a 'public' place.").

### 2.      Apartment 2

Plaintiff also argues that she has standing to assert a Fourth Amendment claim because she had a reasonable expectation of privacy in Apartment 2 on the grounds that she maintained Apartment 2 as her own and had not rented it to any third party.  (Dkt. No. 74 at 16-17.)

### a.      Reasonable Expectation of Privacy

Ownership of the property alone does not create a reasonable expectation of privacy in the premises.  *United States v. Cruz*, 475 F. Supp. 2d 250, 253 (W.D.N.Y. 2007).

> Although the extent of a defendant's property or possessory interest in the place searched is a factor generally considered in determining the reasonableness of a defendant's expectation of privacy, *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991), a defendant's lack of such an interest does not rule out the possibility that he may still show a reasonable expectation of privacy.

*United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (discussing how overnight guests have a legitimate expectation of privacy in the homes of their hosts).  Accordingly, "in the appropriate circumstances, [an individual] may have a legitimate expectation of privacy when he is there 'with the permission of his host, who is willing to share his house and his privacy with his guest."  *Fields*, 113 F.3d at 321 (quoting *Minnesota v. Olson*, 495 U.S. 91, 99 [1990]).  However, as the Court has previously explained, Plaintiff does not have a reasonable expectation of privacy in the door or door frame of Apartment 2.  *See supra* Part III.A.1. of this Decision and Order.

b.      **Hearsay**

Although Plaintiff cites to her deposition in support of her opposition to Defendants'

motions, the only deposition testimony that Plaintiff identifies is hearsay.  (Dkt. No. 71, Attach.

11 at 51-53 [Plf.'s Aff.]; Dkt. No. 73, at ¶ 41; Dkt. No. 75 at ¶ 65).  "'[O]nly admissible evidence

need be considered by the trial court in ruling on a motion for summary judgment,' and a 'district

court deciding a summary judgment motion has broad discretion in choosing whether to admit

evidence." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (quoting *Presbyterian Church*

*of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 [2d Cir. 2009]).  The "principles governing

admissibility of evidence [does] not change on a motion for summary judgment." *Raskin v.*

*Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Porter*, 722 F.3d at 97.  Therefore, if hearsay

evidence "'will be presented in admissible form at trial' it may be considered during a motion for

summary judgment." *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90, 93-94

(2d Cir. 2019) (summary order) (quoting *Santos v. Murdock*, 243 F.3d 681, 683 [2d Cir. 2001]).

In this case, however, Plaintiff fails to address how the evidence relied upon in her opposition to

Defendants' motions does not amount to inadmissible hearsay.  Rule 801 of the Federal Rules of

Evidence defines hearsay as a statement offered to prove the truth of the matter asserted in the

statement. Fed. R. Evid. 801(c).  "If the significance of an offered statement lies solely in the

fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is

not hearsay." *DeNigris v. New York City Health and Hosps. Corp.*, 552 F. App'x 3, 6 (2d Cir.

2013) (quoting Fed. R. Evid. 801[c] advisory committee's note).  Although Plaintiff relies on an

alleged statement by "Officer Brooks" that Defendants entered into Apartment 2 (among the

other apartments), she relies on this statement for the truth of the matter asserted—that the

Urgent Defendants and Defendant Mattracion entered into Apartment 2 during the execution of

27

the search warrant.  (Dkt. No. 71, Attach. 11 at 51-53.)  Plaintiff's counsel also cites this

statement in Plaintiff's denial of Defendants' statements of material facts, further highlighting

Plaintiff's reliance on the truth of the matter asserted.  (Dkt. No. 73, at ¶ 41; Dkt. No. 75 at ¶ 65.)

Moreover, Plaintiff's deposition testimony speculates that Officer Brooks was present during the

execution of the search warrant at the Property.  (Dkt. No. 71, Attach. 11 at 51-53.)  If Officer

Brooks was not present during the execution of the search warrant, this raises double hearsay

issues.  *See Rodriguez v. Modern Handling Equipment of NJ, Inc.*, 604 F. Supp. 2d 612, 622

(S.D.N.Y. 2009) ("Double hearsay is not admissible unless each level of hearsay is covered by

an exception to the hearsay rule.").  Because Plaintiff has not satisfied the first level of hearsay,

the Court does not analyze whether Officer Brooks' statement would be admissible as double

hearsay.

### c.   Additional Discovery

The deadline for discovery in this action was March 6, 2020.  (*See generally* Docket

Sheet.)  To date, Plaintiff has failed to confirm the identify of Officer Brooks, nor has she

produced an affidavit stating that he would be called to testify at trial (or produced an affidavit or

deposition from Officer Brooks that confirmed his prior statements).  Instead, Plaintiff's

opposition focuses on the issue of her standing and reasonable expectation of privacy in a vacant

apartment undergoing renovations.  (Dkt. No. 74, at 16-17.)  Despite the fact that Plaintiff had a

full and fair opportunity to pursue additional discovery, she has failed to do so.  Accordingly,

any additional evidence pertaining to Officer Brooks' alleged statement will be disregarded by

the Court.  *See Luntz v. Rochester City School Dist.*, 515 F. App'x 11, 1 (2d Cir. 2013) (holding

that the district court did not abuse its discretion in denying additional discovery to oppose a

summary judgment motion).  Therefore, the Court finds that Plaintiff has failed to support her

assertion with credible evidence that the Urgent Defendants and Defendant Mattracion entered Apartment 2 in violation of the Fourth Amendment.

For all of these reasons, the Urgent Defendants' and Defendant Mattracion's motions for judgment on the pleadings, or in the alternative for summary judgment, with regard Plaintiff's Fourth Amendment claim is granted, and Claim Two is dismissed as against the Urgent Defendants and Defendant Mattracion.[13]

**B.      Whether the Court Should Exercise Supplemental Jurisdiction Over Plaintiff's Fifth Claim (Under State Law for Property Damage)**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated below.

Here, the Court finds that Plaintiff's remaining claim falls under the "usual case" category and it is not appropriate for the Court to exercise supplemental jurisdiction over it.  As a general rule, "when the federal claims are dismissed, the state claims should be dismissed as well," and the ordinary case "will point toward declining jurisdiction over the remaining state-law claims."  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998); *Meagher v. State University Construction Fund*, 17-CV-0903, 2020 WL 5504011, at *21 (N.D.N.Y. Sept. 11, 2020) (Suddaby, C.J.).  Because all of Plaintiff's federal claims have been dismissed prior to trial, the Court finds that the judicial economy and comity factors weigh decidedly in favor of declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.  *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law . . . . [I]f the federal claims are dismissed before trial . . . the state claims should

---

[13]      Because the Court has dismissed Plaintiff's Fourth Amendment claim on multiple grounds, the Court does not address Defendants' qualified immunity arguments.

be dismissed as well.").  The Court also finds that the convenience and fairness factors weigh in favor of declining to exercise jurisdiction, as New York State courts are better positioned to address the remaining state law claim, and neither party will be prejudiced by the removal to New York State court.  Moreover, the Court has previously refused to exercise supplemental jurisdiction at the summary judgment phase of a case.  *See Meagher*, 2020 WL 5504011, at * 22 (declining to exercise supplemental jurisdiction in a motion for summary judgment). Accordingly, the Court concludes that Plaintiff's fifth claim is a state-law question that would be better handled in the first instance by a state court.

For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim, and the claim is therefore dismissed without prejudice to filing in state court within the applicable limitations period.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court is directed to correct the spelling of the name of Defendant Mattracion in the caption of the docket sheet in this case in accordance with note 1 of this Decision and Order; and it is further

**ORDERED** that the Urgent Defendants' motion for judgment on the pleadings or in the alternative for summary judgment (Dkt. No. 71, Attach. 26), and the Ellenville Defendant's motion for judgment on the pleadings or in the alternative for summary judgment (Dkt. No. 72, Attach. 6), are **GRANTED**; and it is further

**ORDERED** that the following claims are **DISMISSED**:

(1) Plaintiff's First Claim (under the Fourteenth Amendment's Due Process Clause) against all Defendants;

(2) Plaintiff's Second Claim (under the Fourth Amendment's prohibition against

unreasonable searches and seizures) against all Defendants;

(3) Plaintiff's Third Claim (under the Fifth Amendment's Takings Clause) against the

Ellenville Defendants; and

(4) all of Plaintiff's claims against Defendant Jacobs and Markiewicz; and it is further

**ORDERED** that Plaintiff's sole remaining claim, under New York State common law for

property damage ("Claim Five"), is **<u>DISMISSED</u>** **without prejudice** to refiling in state court

pursuant to the applicable limitations period, because the Court declines to exercise supplemental

jurisdiction.

Dated: November 13, 2020
       Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge